In view of the discrepancies between the alleged *Page 392 
statement of facts in appellant's brief and the summary of exceptions, and the exceptions in the statement of case on appeal, as settled by the judge, we deem it proper to make the following preliminary explanation:
The governing body of the town of Hillsboro, on 28 August, 1922, passed the bond ordinance in question, which was to be submitted to the qualified voters of the town at an election to be held 10 October, 1922. Before said election was held, plaintiff brought this action to restrain the holding of said election. At the hearing of the matter at chambers, plaintiff abandoned his request for an order restraining the (372) holding of the election, and was granted permission to file an amended complaint, and the election, for which a new registration of qualified voters was had, totalling 399 names, was duly held on 10 October, and at this election 290 votes were cast in favor of said bond ordinance and 7 votes were cast against it. Plaintiff filed an amended complaint, seeking to prevent the proposed issue of bonds by the town, and to test the validity of a contemplated assessment for local improvements. No bonds have been issued nor has any assessment been made. After the election, on 28 November, 1922, the governing body of the town considered certain petitions filed by property owners asking for local improvements amounting approximately to $15,000, as shown by the report of the engineer, in accordance with Laws 1915, ch. 56, and amendments thereto. After careful consideration of these petitions, the board authorized the issuance of bonds in the sum of $60,000, which amount was to cover the street improvements, contemplated by the town, and the local improvements petitioned for.
Inasmuch as the exceptions contained in appellant's summary of exceptions do not conform to the exceptions shown in the statement of the case settled by the judge, we will have to consider only the exceptions as found in the statement of the case on appeal, and we will take up the exceptions in the order appearing in the record.
Exception number one: This matter is in the discretion of the trial court. The motion was based upon defendant's failure to file an answer to the amended complaint, and to the leave granted by the court to file an answer during the term. A holding based on Revisal of 1905, sec. 515, now C.S. 536, reads: "The exercise of the discretion of the trial judge in permitting an extension of time to file pleadings is not reviewable on appeal." Church v. Church, 158 N.C. 564, headnote 2, there being no gross abuse of the discretion in this instance.
Exception number two: The genuineness or falsity of disputed handwriting may be proven by testimony of a witness, not an expert, who is acquainted with the handwriting of the person supposed to have written *Page 393 
it, either because he had often seen him write, or who had acquired competent knowledge of his handwriting in some other approved manner. Abbott's Proof of Facts (4 ed.), p. 579, par. 4, and cases cited.
Exception number three: The minutes of the board having been introduced in evidence by plaintiff, the court and jury were entitled to hear the full entry in regard to the action taken by the board in the matter. One reason is because without knowledge of the entry the court or jury could not understand what was done. The subject of the validity of corporate acts, and the evidence tending to show it, was considered in Bailey v. Hassell,184 N.C. 450.
Exception number four: An objection to the reception of evidence is waived if not taken in apt time. Johnson v. Allen, (373)100 N.C. 135; 26 R.C.L., pp. 1045-46. It is the general rule that an objection to a question asked a witness must be interposed when the question is asked and before the answer, or the right to have the testimony excluded is waived. Dobson v. R. R., 132 N.C. 900. Even if objection had been made in apt time, this evidence was competent for the reasons set forth above under exception number three.
Exception number five: The evidence proposed to be introduced was incompetent because it was hearsay, and had no bearing on the issue. Lockhart on Evidence, ch. X, p. 138; King v. Bynum, 137 N.C. 491. We have cited authorities for this proposition, but it would seem to be unnecessary, as the principle is elementary.
Exception number six: The question asked was incompetent because the petition itself shows that Mrs. Waller had not signed it, and the petition was the best evidence.
Exceptions numbers seven and eight: The petition being signed "Merchants Supply Company" by J. H. Freeland, Business Manager," it was competent for the witness, as president of the corporation, to explain the authority for the signature, which she did by testifying that she instructed him to sign it for the corporation, showing that she not only authorized it, but ratified the action of her agent, who was her brother, in signing the petition.
Exceptions numbers nine and ten: The evidence here objected to was elicited by plaintiff from his own witness, in response to his own questions, and there was no objection by plaintiff until the entire testimony, consisting of several sentences, was in. Plaintiff should have moved to strike out the testimony of the witness, which he failed to do. It was in the discretion of the court whether it would strike out the testimony, where objection to it was apparently acquiesced in, and the objection came too late.
Furthermore, the evidence of the witness disclosed that he was, and *Page 394 
had been for many years, acting as agent for the heirs of James Webb, Jr., Cox and Browne Webb, and of his mother, Mrs. J. C. Webb; that he transacted all their business with reference to the property in question, and that his action in so doing had been endorsed, and ratified, and his agency recognized by them; and, furthermore, that it had been confirmed by acquiescence, and his signature to the petitions in question, not having been objected to by them, but seemingly recognized and ratified, neither plaintiff nor any other person should be heard to question them.
Exception number eleven: The witness, as a member of the firm of H. W. and J. C. Webb, a partnership, had a right to testify that he signed the petition for the firm, in explanation of this act of signing the petition. It appears from the testimony of the witness that this (374) partner signs practically all papers for the firm, in the course of the partnership business, and the other member of the firm not questioning his right to sign it in this case, though called upon to do so, no one else can question it. According to the evidence of the witness, he owned no property as an individual, but only as a member of the partnership.
Exception number twelve: The evidence sought to be admitted was incompetent, irrelevant, and immaterial, and the error, if any, was cured later by the testimony of the witness Arrasmith that he was not present. Appellant makes no contention that the chairman of the board of county commissioners signed the petition before 28 August, 1922, as it was not necessary for the petition of property owners, requesting the making of local improvements, to be filed at the time of the passage of the ordinance, but it is sufficient for the petitions to be filed at any time prior to the issuance of the bonds. This is clearly set forth in Laws 1921, Extra Session, ch. 106, sec. 2941.
Exception number thirteen: A controversy having arisen between counsel over the health of the town treasurer, the remarks of the court were addressed to statements by counsel on that point. It was manifestly proper for the court to tell the jury that they must find the facts from the evidence and not from what counsel or the court had said. S. v. Foster, 172 N.C. at p. 963. Considering only what the record discloses, this controversy, so far as we can judge of it, hardly reached the proportions of even a "tempest in a teapot," and though there is not a full statement of it, and some things appear in the briefs which are not clearly stated in the record, we cannot declare the remark of the judge to be error, for it impresses us as one deserving our commendation. A judge is not a mere moderator or a mere figurehead, but is an essential and important part of the court, if not the most important, and should take the lead and direct the course of proceedings, where necessary to *Page 395 
orderly procedure in the court. The action of the judge worked no harm to the plaintiff, and it must be said that he does not occupy (figuratively speaking) a position like unto that of a "bump on a log," but is an active agency and expected to assume and retain a commanding position, to keep all things well in hand, as the learned judge very properly and promptly did in this case, thereby preventing prejudice to either of the parties, and this is what we not only approve, but commend.
Exceptions numbers fourteen and fifteen: The tax books for the year 1921 could throw no light upon the amount of taxable property assessed for taxation for the year 1922, which latter is the valuation required by Laws 1921, Extra Session, ch. 106, sec. 2943, subsec. 1 (5) (d), which provides that "The assessed valuation of property, as last fixed for municipal taxation," shall govern, which in this case was the assessed valuation as fixed 1 May, 1922.
Exception number sixteen: This, if error, is harmless, as all computations were based upon the assessed valuation of taxable (375) property as of 28 August, 1922.
Exception number sixteen and a half: We refer to the discussion under exception number one of this opinion, without repetition, as it applies to this exception.
Exception number seventeen: The issues tendered by plaintiff are not such as naturally arose upon the pleadings. C.S. 584; Potato Co. v.Jeanette, 174 N.C. par. 4, p. 240. Further, the statement of case shows no exception was taken to the issues submitted, and they were clearly sufficient and comprehensive to present every material question in controversy. Ratliff v. Ratliff, 131 N.C. 425; Warehouse Co. v. Ozment,132 N.C. 839.
Exceptions numbers eighteen and nineteen: The statement of the case shows that plaintiff noted two general exceptions to the charge of the court. In his summary of exceptions, he has inserted other exceptions and points out certain alleged errors, but this comes too late, and is not a compliance with the rule. Exceptions to the charge must be specific and not too general. S. v. Johnson, 161 N.C. 264; Jackson v. Williams, 152 N.C. 203. Exceptions must be stated separately, in articles numbered, and it is better that no exception should contain more than one proposition. Gwaltneyv. Assurance Society, 132 N.C. 925.
In appellant's brief reference is made to the case of Tarboro v. Forbes,ante, 59. That case is distinguished from the present one in that theTarboro case, supra, was brought to enforce an assessment made on property for local improvements. This case is to test the validity of a bond ordinance. In the Tarboro case, supra, the submitted controversy and agreed facts showed that the town owned as a common the entire length *Page 396 
of one side of the improvement district, which constituted about one-half of the front foot line, and that the town had not signed the petition, and as all the owners on the other side of the street had not signed the petition, it was manifest from the record, on its face, that the requisite number of owners and of lineal frontage had not signed, but here the record shows that a majority of the owners, having the larger part of the lineal feet on the front line, have signed, and this fact was so found by the jury.
A municipal corporation has authority to issue bonds for necessary expenses without the sanction of an election. Nevertheless, in this case an election was held, according to law, as now appears, and the bond ordinance was ratified by a vote of 297 to 7 out of a registered vote of 399. However, it is provided that the net debt of the municipality must not exceed 8 per cent of the taxable property therein.
This action is brought to challenge the right of the municipality to issue bonds for necessary expenses, and, in the trial, the validity and sufficiency of the petitions for local improvements were attacked. (376) If the plaintiff desires to attack the assessments when levied against his property, the statutes gives him a remedy. C.S. 2714. Furthermore, it is immaterial in this action whether the petitioners are sufficient or not. The municipality may enact an ordinance authorizing the issuance of bonds for which local improvements are secured, provided the bonds are not issued until a majority of owners representing a majority of lineal front feet of property have signed the petitions. Laws 1921, Extra Session, ch. 106, sec. 2941.
If the petitions did not have a sufficient number of signatures, the town could issue bonds for necessary expenses, especially when sanctioned by popular vote, unless the issue should be in excess of the prescribed limitation. The statute of 1921 (Extra Session), ch. 106, sec. 2943 b (4), permits a municipality to charge off from its gross debt, among other things, amounts to be levied as special assessments for local improvements. Therefore, if at any time before the bonds are issued a petition for local improvements containing a sufficient number of authorized signatures to bind the property owners in the improvement district be filed and certified, the town may charge off the estimated amount to be realized by said special assessments, as provided by said statute, and in this case when this shall have been done, according to all the evidence, the net debt will be within the 8 per cent limitation.
Consequently, it would appear that a determination of the validity of the bond issue, or of the assessment, cannot be had until the town proceeds to issue its bonds. Then the plaintiff may bring his action to test the validity of the bond issue or of the assessment, as he sees fit. Plaintiff's action is now premature. *Page 397 
Appellee calls the attention of the Court to House Bill No. 347, Senate Bill No. 332, entitled "An act to ratify bonds of the town of Hillsboro," enacted by the Legislature of 1923, and ratified 12 February, 1923, a certified copy of which act has been filed in this action with the clerk of the court. Kinston v. Trust Co., 169 N.C. 207; Reid v. R. R.,162 N.C. 355-358; Supervisors v. Brown, 112 U.S. 261-271.
The Kinston case, supra, decided:
"1. A legislative authorization to a municipality to issue bonds for paving and generally improving its streets; to enlarge and extend its water works system; to enlarge and better equip its electric light plant; to install an electric fire-alarm system, and to erect municipal buildings, is for necessary expenses, and not subject to the restrictions of our Constitution, Art. VII, sec. 7, requiring that the question of the issuance of the bonds be submitted to the vote of the people.
"2. Municipalities are very largely subject to legislative control as to the issuance of bonds and other matters governmental in character, and they must observe the statutory requirements, charter or otherwise, under which they act, it remaining in the power of the (377) Legislature to remove by subsequent legislation irregularities by reason of the violation or non-observance of requirements upon the municipality made in a previous act, when no vested rights have supervened and no mandate of the Constitution has thereby been violated.Jones v. Comrs., 137 N.C. 579.
"3. Where a bond issue for necessary expenses has been submitted to and approved by the voters of a city, according to a statutory requirement, but it appears that it is in violation of the city's charter requiring that no ordinance or resolution respecting such matters be finally passed on the date of its introduction, it is within the authority of a subsequent Legislature to validate the issuance of the bonds by direct legislation, not requiring the proposition to be again submitted to the voters; nor is objection material that the validating act refers to bonds already delivered when in fact they had only been prepared, and were refused by the purchaser."
The Court, in its opinion, further observed generally that under our decisions, and on the facts in evidence, the bonds are for necessary expenses, and are not therefore, subject to the constitutional restrictions on municipalities as to incurring indebtedness, contained in Article VII, section 7, of the Constitution. Murphy v. Webb, 156 N.C. 402; Comrs. v.Webb, 148 N.C. 120; Fawcett v. Mount Airy, 134 N.C. 125; Black v. Comrs.,129 N.C. 121; Vaughn v. Comrs., 117 N.C. 434. The municipalities, however, in matters of this character, are very largely subject to legislative control, and as to incurring indebtedness and other *Page 398 
questions, governmental in character, they must observe the statutory requirements under which they act. Allison v. Williams, 152 N.C. 147;Hendersonville v. Jordan, 150 N.C. 35; Robinson v. Goldsboro, 135 N.C. 382;Wadsworth v. Concord, 133 N.C. 587. This last position, however, is subject to the principle, very generally recognized, that when defects and irregularities are by reason of the violation or nonobservance of statutory provisions, and unless vested rights have supervened, the objections may be removed and the measure validated by proper legislative action. Reid v. R.R., 162 N.C. 355-358; Grenada County Supervisors v. Brown, 112 U.S. 261,271; Illinois v. Ill. Cen. R. R., 33 Fed. 721-771; Schenck v.Jeffersonville, 152 Ind. 204-217.
In Reid's case, supra, the Court said: "It is well recognized that, so far as the public is concerned and when not interfering with vested rights, a Legislature may ratify and make valid measures which it might have originally authorized." In Board Supervisors, etc., v. Brown,supra, it was held: "That a municipal subscription to the stock of a railroad company, or in aid of the construction of a road, made without authority previously conferred, may be confirmed and legalized by subsequent legislative enactment, when legislation of that (378) character is not prohibited by the Constitution, and when that which was done would have been legal had it been done under legislative sanction previously given," and in Schenck's case, supra, "In the absence of constitutional restriction, the Legislature has the right to legalize the bonds of a city so long as vested rights have not intervened." Anderson v. Wilkins, 142 N.C. 154.
We have closely and carefully examined the assignments of error singly and collectively, and find that the most of them, say the first twenty-two in number, are to matters clearly competent in form and strictly relevant to the issues in the case, and have been in one way or another so frequently considered and decided by this Court, that we deem any further discussion of them, or any beyond that we have devoted to them, as being unnecessary. No new principle is involved, and we would add nothing at all novel to our stock of precedents, but simply reiterate what we have heretofore so often held.
This brings us to the charge, which appears to cover the case completely, and to be without flaw. The computation as to the town's indebtedness was simple and the correct result easily ascertained. The jury decided that the provisions as to the limitation of the bond issue to 8 per cent of the total assessed valuation of taxable property has not been transgressed. The court properly instructed the jury that the judge and jury had nothing to do with the questions as to whether it is wise to incur the indebtedness, or issue the bonds for public improvements, or *Page 399 
as to whether the method suggested, or proposed, by the local authorities for laying out and constructing the roads or streets is the best one or not, and that no duty or responsibility for the same rested upon the court or jury, but that they were confined simply, that is, the jury, to finding the facts, and the judge to declaring the law arising thereon. In all respects, upon this phase of the case, the judge correctly and fully instructed the jury — without question, and this also is true as to the assessments, and what we have just said applies most assuredly to the question as to whether the roads or streets and sidewalks should be hard-surfaced, laid in cement, asphalt, or concrete, and of what width, are manifestly matters left to the judgment and sound discretion of the local authorities to whom the law has committed or confided the same. It having been determined what is 8 per cent of the taxable value of town property, after proper deductions were made for that purpose, and that all necessary and required preliminaries had been observed, in the way of a petition, and so forth, the jury properly returned the following verdict:
"1. Is the aggregate amount of the bond issue, less the deduction allowed by law, in excess of 8 per cent of the total assessed valuation of the property of the town of Hillsboro for the year 1922? Answer: `No.'
"2. Were the petitions filed for local improvements on King and Churton streets signed by a majority of the persons owning (379) property within the proposed improvement district, as required by the statute? Answer: `Yes.'"
The judgment of the court logically followed the verdict, as properly interpreted and understood in the light of the evidence and the charge of the court.
Mr. Chester Turner presented his case very strongly for the plaintiff, and as convincingly as the facts of the case permitted, but when all things are considered, the correctness of the rulings by Judge Connor, who presided at the trial, and of all the other proceedings, especially when, as we repeat, they are taken in connection with the statute curing defects, if any, and validating the election, and so forth, we do not now see how we can do otherwise than overrule all exceptions and affirm the judgment of the court, which we now do.
But as the Legislature has cured any defects or irregularities in the proceedings, including those affecting the election, and its preliminaries, we cannot now see, with this fact alone before us, any ground upon which we can interfere and grant relief to the appellant.
As suggested in the defendant's brief, and resting what we will now state solely upon it, the plaintiff may, perhaps, further pursue his remedy, if he has any, hereafter, but as the record now stands, we can *Page 400 
find no reason sufficient for a reversal or for a modification of the judgment.
We therefore declare that we find no error in the record, and it will be so certified to the lower court according to the statute.
No error.